761 P.2d 1051

**PIMA COUNTY, a body politic by CITY OF TUCSON, an Arizona municipal corporation, in its capacity as agent for Pima County, Plaintiff/Appellant,**

v.

**MAYA CONSTRUCTION COMPANY, an Arizona corporation, Defendant/Appellee.**

**Nos. 2 CA–SA 0436, 2 CA–CIV 5913.**

Court of Appeals of Arizona, Division 2, Department B.

Nov. 20, 1986.

Frederick S. Dean, Tucson City Atty., by Loretta Humphrey and Louise Stratton, Tucson, and Lewis and Roca by Joseph E. McGarry, Susan M. Freeman and Alexandra M. Shafer, Phoenix, for plaintiff/appellant.

Chandler, Tullar, Udall & Redhair by Christopher J. Roads and Thomas Chandler, Tucson, for defendant/appellee.

## OPINION

LIVERMORE, Presiding Judge.

In this case, we must determine whether a claim must be filed under public claims statutes prior to contractually-required arbitration proceedings. We agree with the superior court that it need not.

In 1983, Pima County and the City of Tucson entered into an intergovernmental agreement relating to the design, construction and operation of a wastewater treatment plant and other related facilities. Under that agreement, the County irrevocably appointed the City as its sole and exclusive agent to act for and on behalf of the County throughout the construction project.

Following the County's public bid solicitation and an award of the contract by the Board of Supervisors, on November 8, 1983, to Maya Construction Company, Maya entered into a contract with Pima County for the construction of a reclaimed water system treatment facilities reservoir and pump station. Included in its provisions is the following:

All claims, disputes and other matters in question between owner and contractor arising out of, or relating to the contract documents or the breach thereof except for claims which have been waived by the making or acceptance of final payment as provided by § 329 shall be decided by arbitration in accordance with the construction industry arbitration rules of the American Arbitration Association then obtaining subject to limitations of this § 328. This agreement so to arbitrate and any other agreement or consent to arbitrate entered into in accordance herewith as provided in this § 328 will be specifically enforceable under the prevailing arbitration law of any court having jurisdiction.

During construction, as a result of certain change orders, the contract amount was revised to a total of $2,562,578.15, and the date of substantial completion was extended to August 20, 1984. Completion actually occurred early in 1985, and Maya applied for final payment at that time. In June 1985, Maya received its final payment. The total of all progress payments and the final payment was the amount the parties had agreed to by change order, $2,562,-578.15, and did not account for the disputed amounts described below.

In October 1984, Maya had requested an increase in the contract amount of $455,-858.65. On December 21, 1984, Maya was notified that the owner and project engineers agreed that only $9,000 would be an appropriate adjustment. The City, in correspondence from its attorney's office to Maya's counsel dated January 30, 1985, acknowledged the existence both of Maya's claims for additional compensation and the City's claim for liquidated damages under the contract, presumably due to the delayed completion date. In that letter, the city attorney wrote:

In the interest of expediting a resolution of Maya's claims for additional compensation on the above project and pursuant to the general agreement on the part of all concerned that those claims should be arbitrated, I am requesting that you prepare a preliminary draft of the arbitration statement we will eventually be required to submit to the American Arbitration Association. In response to your request that the matter of liquidated damages be included in the arbitration, we will prepare the City's version of the arbitration statement and include our claim for liquidated damages. Hopefully, we can then work out an acceptable joint statement.

Since Mr. Ruiz [president of Maya] has failed to respond to the engineers' preliminary findings ... I am assuming that no response will be forthcoming, that Maya will waive a final written decision, and that we can proceed directly to the agreed-on arbitration proceedings.

Six days later, Maya requested a second adjustment of the contract price, this time for a total increase of $1,384,753. In response to that request, Maya's president received correspondence from the City dated February 19, 1985, which stated as follows:

The City of Tucson, as agent of Pima County ... hereby makes a demand for arbitration pursuant to ... the contract documents for the project, with respect to the demands of Maya Construction Company for an equitable adjustment to its contract price....

In addition to all claims of Maya Construction Company ... the City of Tucson also demands to arbitrate its claims for liquidated damages under the contract. We have forwarded a copy of this demand to the American Arbitration Association, as required by the contract documents.

Subsequently, in May 1985, Maya made a third request for an increase of the contract amount, claiming a total of $1,477,-861. On September 23, 1985, Maya filed its

own demand for arbitration. In January 1986, Maya presented to the City its summary claiming approximately $2.2 million as additional compensation, along with three volumes of supporting appendices. In superior court, the City's counsel explained the presentation of the summary and appendices as follows: "What happened in general fashion after the delivery of the $2.2 or $2.3 million for volume claim in January there was what accountants call an agreed-upon procedure, city, county review of the Maya books in terms of what money was spent, that type of thing."

On August 20, 1986, the City filed its complaint on behalf of Pima County in superior court alleging Maya's noncompliance with the claims statute and seeking declaratory and injunctive relief. Maya filed a motion to dismiss the City's complaint and, following oral argument and the filing of memoranda, the superior court entered a minute entry order finding that the county claims statute, A.R.S. § 11–622, does not control in this case and ordering that the City's request to stay the arbitration proceedings and "all further relief requested" be denied. The City immediately filed a notice of appeal and, simultaneously, brought a special action proceeding in this court. Pursuant to a stipulation of the parties, we accelerated the appellate briefing and have treated this as an expedited appeal. The order dismissing the City's complaint with prejudice is an appealable order pursuant to A.R.S. § 12–2101(B).

The statutes which the City seeks to apply in this case are A.R.S. §§ 11–622 and 11–630, which provides as follows:

*§ 11–622. Demand; time limit for presentation of claim*

A person having a claim against a county shall, within six months after the last item of the account accrues, present to the board of supervisors of the county against which the demand is held, a written itemized claim executed by him under penalties of perjury, stating minutely what the claim is for, specifying each item, the date and amount thereof, and stating that the claim and each item thereof is justly due. The board shall not consider a claim unless the demand therefor is presented within such time.

*§ 11–630. Action upon rejected or partially allowed demand*

A. A claimant dissatisfied with the rejection of his demand, or with the amount allowed thereon, may sue the county therefor at any time within six months after final action of the board, but not afterward.

We note that the legislature passed laws effective on October 4, 1984 governing actions against "public entities." A.R.S. § 12–821(A) provides:

*§ 12–821. Authorization of claim against public entity or public employee; definition*

A. Persons who have claims against a public entity or public employee shall file such claims in the same manner as that prescribed in the Arizona Rules of Civil Procedure, Rule 4(D) within 12 months after the cause of action accrues. Any claim which is not filed within twelve months after the cause of action accrues is barred and no action may be maintained. . . .

Subsection 12–820(6) defines a public entity as "this state and any political subdivision of this state." A.R.S. § 12–822 provides:

*§ 12–822. Service of summons; change of venue*

A. Service of summons in an action authorized in § 12–821 shall be made pursuant to Arizona Rules of Civil Procedure, Rule 4(D).

B. In an action against this state upon written demand of the attorney general, made at or before the time of answering, served upon the opposing party and filed with the court where the action is pending, the place of trial of any such action shall be changed to Maricopa county.

■ The City argues that Maya did not file claims as required by § 11–622 and is therefore precluded from proceeding with the arbitration. Maya contends that the claims statutes do not apply to agreed-upon arbitration proceedings, and contemplate only claims which precede the filing of a lawsuit. The terms "action" and "sue" in

§§ 11–622, 11–630, 12–821 and 12–822, Maya argues, must mean just that—a lawsuit in court, not alternative dispute resolution agreed to in advance in the public works contract. We agree.

The ordinary usage of the word "sue" and the definition of the term "action" in A.R.S. § 1–215(1)—"any matter or proceeding in a court"—lead us to conclude that the claims statutes were intended to apply to court proceedings and not to other claim resolution processes. *See also* Rules 1–3, Rules of Civil Procedure, 16 A.R.S.; *Thorgaard Plumbing & Heating v. County of King,* 71 Wash.2d 126, 426 P.2d 828 (1967); *City of Madison v. Frank Lloyd Wright Foundation,* 20 Wis.2d 361, 122 N.W.2d 409 (1963). Without deciding whether § 11–622 or § 12–821 applies, we hold that under either statute the superior court was correct in determining that claims statutes do not apply where, as here, the parties to a contract have agreed to dispute resolution by other than court proceedings.

The purposes of the claims statute, as stated by the court in *State v. Brooks,* 23 Ariz.App. 463, 534 P.2d 271 (1975), are to afford the public entity the opportunity to investigate the claim and assess its liability, to pursue settlement and avoid litigation, and to advise the legislature of its potential liability where settlement is not achieved. The underlying intent, particularly of the county claims statute, was also to relieve the Board of Supervisors from having to meet items of an open account years after the pertinent data may have passed from the knowledge of the county officers so that the validity of the individual items could no longer be determined. *Fleming v. Pima County,* 141 Ariz. 149, 153, 685 P.2d 1301, 1305 (1984). All these purposes are served by our ruling today.

■ An agreement to arbitrate constitutes an agreement in advance for a particular method of dispute or claim resolution. A.R.S. § 12–1518(A) provides:

> *§ 12–1518. State and political subdivisions; use of arbitration*
>
> A. In the discretion of any state agency, board or commission or any political subdivision of this state, the servic-es of the American arbitration association, or any other similar body, may be used as provided by this article. Any agreement to make use of arbitration shall be made either at the time of entering into a contract or by written mutual agreement at a subsequent time prior to the filing of any civil action.

Where arbitration is provided for in the contract, the claimant is required only to act in compliance with the written agreement in order to pursue its claim against the particular state political subdivision. We believe such an agreement to arbitrate results in an expedited resolution of disputes through the arbitration process and so serves the purpose stated in *Fleming.* Also, the possibility of investigation and settlement exists prior to the full-blown arbitration hearing. If a public entity believes it useful to have claims presented in advance of arbitration, it can, of course, contractually require that as a precondition to arbitration.

The judgment is affirmed. Appellee is awarded its attorney's fees on appeal in an amount to be determined upon the filing of the statements required by Rule 21, Rules of Civil Appellate Procedure, 17B A.R.S.

LACAGNINA, J., concurs.

HOWARD, Judge, dissenting.

The majority holds that since arbitration is neither an "action" under A.R.S. § 12–821, nor a suit under A.R.S. § 11–630, the nonclaim statutes do not apply. This reasoning fails to take into account the fact that confirmation of the arbitration award is made by the superior court. Although the entire arbitration proceeding does not take place in court, I would, because of the court's eventual entry into the arbitration arena, construe the proceedings as an "action" or a suit under the statutes in order to harmonize the purpose of the arbitration statute, § 12–1518, with the policy behind the nonclaim statutes.

While some courts have held that notice of claim need not be filed before arbitrating, *Thorgaard Plumbing & Heating v. County of King, supra,* and *City of Madi-*

*son v. Frank Lloyd Wright Foundation, supra,* others have held that a claim must be filed. *See Bingham County Commission v. Interstate Electric Company,* 105 Idaho 36, 665 P.2d 1046 (1983), *appealed on other grounds after remand,* 108 Idaho 181, 697 P.2d 1195 (App.1985);[1] *Brazoria County v. Knutson,* 142 Tex. 172, 176 S.W. 2d 740 (1943). In my opinion, these foregoing cases, both pro and con, either have no reasoning for their decision or fail to ground their decisions upon the proper basis. Arbitration is a substitute for trial. It is a functional equivalent of a trial. It can be as expensive and time-consuming as a trial in the superior court. It can cost the governmental body as much in attorneys' fees and expert witness fees as any trial. The same benefits that accrue to the public by virtue of the nonclaim statutes apply with equal force to arbitration. Requiring a claimant to comply with the claim statute prior to demanding arbitration affords the public entity an opportunity to investigate the claim and assess its liability, to pursue settlement and avoid the cost of arbitration, and to advise the legislature of its potential liability where settlement is not achieved. *See State v. Brooks, supra.*

There is no good reason to distinguish between arbitration and an action initially filed in the superior court, and I do not believe that the legislature intended to make the distinction which the majority makes here.

Since the only issue which the superior court decided was whether or not the nonclaim statutes had to be complied with prior to arbitration, I would reverse and remand for further proceedings.

---

1. The Idaho Code, 31–1513, provides that a claimant dissatisfied with the rejection of his claim or demand, or with the amount allowed him on his account, may sue the county at any time within six months after the final action on his claim.