STATE EX REL. DEPARTMENT OF AGRICULTURE AND MARKETS, Plaintiff and Respondent, vs. BADGER DAIRY, INC., and others, Defendants: HEGGESTAD, Defendant and Appellant: MADISON MILK MARKETING CO-OPERATIVE, Interpleaded Defendant and Respondent.

*March 13—April 14, 1944.*

230

For the appellant there were briefs by *Roy C. Heggestad in pro. per.,* and *W. L. Jackman,* attorneys, and *Wilkie, Toebaas, Hart & Jackman* of counsel, all of Madison, and oral argument by *Mr. Jackman.*

For the respondent Madison Milk Marketing Co-operative there was a brief by *Ela, Christianson & Ela* of Madison, and oral argument by *E. Burgess Ela.*

BARLOW, J.   The only question on appeal is whether the deposited federal farm-mortgage bond of appellant Heggestad stands as security for the unpaid indebtedness of Whiting Dairy Company assumed by Badger Dairy, Inc., in the contract of January 20, 1937.   In order to determine this question we must look to the contract entered into between Dairy and Co-operative on January 20, 1937.

The law applicable to the interpretation of contracts is not in dispute.   All parts of the contract must be read together and its provisions not isolated as if they stood alone. *Ogden v. Straus Building Corp.* (1925) 187 Wis. 232, 202 N. W. 34; *Crolius v. Lorge* (1927), 192 Wis. 130, 212 N. W. 253; *Estate of Oeflein* (1932), 209 Wis. 386, 245 N. W. 109. The entire agreement must be looked to for the purpose of giving each provision its intended meaning.   *Hampton Plains*

*Realty Co. v. Melvin Co.* (1934) 214 Wis. 128, 252 N. W. 572. An examination of the contract and the conditions that prevailed at the time of its execution discloses that Dairy, as a new corporation, was taking over the equipment of Whiting Dairy Company and naturally expected to obtain a large portion of the business of its predecessor company. Co-operative was the contracting agency for a group of producers who had furnished milk to Whiting Dairy Company, for which they had not been paid. Dairy, successor to Whiting Dairy Company, was apparently desirous of purchasing milk from these producers and they in turn were interested in protecting themselves against further loss and in recouping the loss which they had suffered. The bond deposited with the Department of Agriculture and Markets would protect Co-operative from loss for any milk sold to Dairy to the extent of the value of the bond. There was no reason for any contract between the parties relative to this security, and the contract merely affirmed the fact that the bond was deposited and the purpose of its deposit. Co-operative was under no obligation to sell milk to Dairy. The Department of Agriculture and Markets had authority to require Dairy to increase the bond in the event it deemed it advisable. It necessarily follows that the contract was not entered into for the purpose of obtaining security for payment of milk being furnished currently.

An examination of the remaining provisions of the contract shows that Dairy agreed to leave on deposit with the Department of Agriculture and Markets the bond in question, or its cash equivalent, for the sole benefit of Co-operative and its members. In the next paragraph it agreed to assume the obligations of Whiting Dairy Company, and provided for the method of payment. The assumption of this obligation was for the benefit of Co-operative and its members. If it was not intended that the bond should be pledged as security for the obligation of Whiting Dairy Company we find no reason for making reference to the bond in this contract.

The obligation to pay for the milk currently delivered was no greater than the obligation to pay the Whiting Dairy Company indebtedness. We assume that the contract was entered into in good faith and that Dairy intended to perform its part of the contract. If this is true there is nothing inconsistent with its pledging the bond to secure its performance. As further evidence of this, the contract provided that it was to have no force and effect after the expiration of six months except that the provisions "whereby party of the first part assumes and agrees to pay the above-mentioned obligations of Whiting Dairy Company and Frank Whiting shall not be terminated and payments under the said provisions shall continue as above specified." It is considered that by the terms of the contract the bond was pledged as security for the payment of the Whiting Dairy Company obligation assumed by Dairy.

It is contended that Heggestad, as owner of the bond deposited with the Department of Agriculture and Markets, at no time personally pledged the bond as security for this obligation. He was secretary of the corporation that entered into the contract that pledged the bond, and as such secretary signed the agreement. He had full knowledge of the contents of the instrument that he signed. He was a party to the agreement as an officer of the corporation, and by the doctrine of equitable estoppel it would be unconscionable to permit him as an individual to maintain a position inconsistent with one in which he had acquiesced. He had knowledge of the facts, or at least he had the means at hand of knowing all the facts. *Baierl v. Riesenecker* (1930), 201 Wis. 454, 227 N. W. 9, 230 N. W. 605; 19 Am. Jur. p. 648, sec. 49. He cannot be permitted at this time to question the pledging of the bond under the terms of the contract.

The decision on this appeal makes it unnecessary to consider the question sought to be reviewed.

*By the Court.*—Judgment affirmed.