STRADINGER, Plaintiff-Respondent, v. CITY OF WHITEWATER, Defendant-Appellant.

Supreme Court

*No. 76-305. Argued January 2, 1979.—Decided May 1, 1979.*
(Also reported in 277 N.W.2d 827.)

20

For the appellant there was a brief by *Clark Dempsey* and *Dempsey & Harrison Law Office,* and oral argument by *Clark Dempsey,* all of Whitewater.

For the respondent there was a brief by *John O. Olson* and *Braden & Olson,* and oral argument by *John O. Olson,* all of Lake Geneva.

SHIRLEY S. ABRAHAMSON, J. This appeal is from a judgment entered upon an order of the trial court confirming an arbitration award made in favor of Emil Stradinger against the City of Whitewater. Secs. 298.-09, 298.12, Stats. The trial court denied the City's motion to reconsider its decision and to vacate the judgment. We affirm.

## I.

In May, 1973, the City of Whitewater contracted with Stradinger to operate the City's sanitary landfill. The City became dissatisfied with Stradinger's work and terminated the contract.

After the City Council rejected Stradinger's claims for payment, Stradinger began a lawsuit against the City

seeking payment allegedly due under the contract and money damages. The City denied the material elements of Stradinger's complaint and filed a counterclaim for $14,331, which it alleged to be extra expense incurred because of Stradinger's breach of his agreement. The City also entered a plea in abatement, citing Stradinger's noncompliance with the contract clause requiring arbitration of disputes.[1]

Stradinger did not contest the plea in abatement but, instead, the parties voluntarily agreed to arbitration. By letter Stradinger's attorney hedged the agreement with statements that it was Stradinger's understanding that the arbitration was unnecessary because Stradinger had performed on the contract and that Stradinger was proceeding to arbitration on the understanding that the contract "envisions something less than binding arbitration . . . [and] that both parties are left to their legal remedies in the Courts of Law."

The City made no written objection to Stradinger's statement of the "understanding" under which the arbitration would be conducted and did not press for a ruling on its plea in abatement. The parties proceeded to arbitration, choosing three arbitrators in the manner provided by the contract.

The arbitration was conducted in a formal manner with hearings at which a reporter was present so that transcripts were available for the use of the arbitrators.

It appears from the record that the parties and arbitrators agreed that seven questions would be submitted to the panel.[2] The panel ultimately answered each ques-

---

[1] The arbitration provision of the contract appears at page 29 of this opinion.

[2] "1. Did Emil Stradinger breach his contract with the City of Whitewater and fail to perform his obligations under the contract for a period of seven days?

ANSWER: *Yes.*

tion, but its decision was first submitted in the form of a brief letter which stated that a total of $3,920 would be a "fair and equitable" amount for the City to pay Stradinger in settlement.

Dissent ——— Name ——— Answer of Dissenter ———
Answer Yes or No.

"2. If you answered question 1 'Yes', then answer this question: Did that failure justify the City in terminating his contract with the City to operate the land fill site?

ANSWER: *No*

Dissent ——— Name ——— Answer of Dissenter ———

"3. If you answered either questions 1 or 2 'no', then answer this question: What amount of money will fairly compensate Emil Stradinger for the termination of his contract with the City?

ANSWER: *$1,500*

Dissent ——— Name ——— Answer of Dissenter ———
Answer Yes or No.

"4. Is Emil Stradinger entitled to overtime because of the delivery material excavated from the City streets to the land fill site?

ANSWER: *Yes*

Dissent ——— Name ——— Answer of Dissenter ———

"5. If you answered question 4 'yes', what amount will fairly compensate him for that overtime?

ANSWER: *$2,200*

Dissent ——— Name ——— Answer of Dissenter ———
Answer Yes or No.

"6. Is Emil Stradinger entitled to overtime for hours worked between April 16th and April 30th, 1974?

ANSWER: *Yes*

Dissent ——— Name ——— Answer of Dissenter ———
Answer Yes or No.

"7. If you answered question 6 'yes', then what amount will fairly compensate Emil Stradinger for that overtime?

ANSWER: *$220*

Dissent ——— Name ——— Answer of Dissenter ———

"THIS IS THE UNANIMOUS DECISION OF THE ARBITRATION PANEL.

"/s/ *Robert Romey* June 22, 1976, nunc pro tunc July 19, 1975.

"/s/ *Joe Tate* June 22, 1976, nunc pro tunc July 19, 1975.

"/s/ *Russel E. Hoffman* June 22, 1976, nunc pro tunc July 19, 1975."

The City Council rejected the panel's decision and notified Stradinger that it wished to proceed to trial. Stradinger promptly filed an answer to the City's counterclaim and then filed notice of readiness for trial. There was a pre-trial conference in February, 1976, and the trial date was set for June 9th. On May 18th, at the City's request, the trial was rescheduled for October 18th, and notice of the new trial date was sent to Stradinger. Three days later, on May 21, 1976, Stradinger took a different tack—he filed a motion for an order confirming the arbitration award pursuant to sec. 298.09, Stats.[3]

The City, which originally had entered the plea in abatement to allow for arbitration, opposed the motion to confirm the award, submitting an affidavit arguing (1) that the arbitration proceedings were never intended to be binding on the parties; (2) that the court lacked jurisdiction because the submission to arbitration acted as an automatic discontinuance of the legal action; and (3) that the award was defective in that it was not signed by the arbitrators or a majority of them as required by sec. 298.08, Stats., and did not answer all of the questions.

Stradinger responded to the City's third objection by submitting a copy of the seven questions, all answers filled in, signed *nunc pro tunc* by all three arbitrators. (*See* note 2 *supra.*)

---

[3] Sec. 298.09, Stats.:

"**298.09 Court confirmation award, time limit.** At any time within one year after the award is made any party to the arbitration may apply to the court in and for the county within which such award was made for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected as prescribed in the next two sections. Notice in writing of the application shall be served upon the adverse party or his attorney 5 days before the hearing thereof."

The trial court confirmed the arbitrators' award, concluding that the contract called for binding arbitration and that all the issues, including the City's counterclaim, had been submitted in the seven questions and had been considered by the arbitrators.

The City moved for reconsideration and vacation of the judgment under sec. 269.46(3), Stats. 1973,[4] submit-

[4] Sec. 269.46(3), Stats. 1973, provides: "All judgments and court orders may be reviewed by the court at any time within 60 days from service of notice of entry thereof, but not later than 60 days after the end of the term of entry thereof." Because the case was pending on January 1, 1976, under sec. 801.01(3)(b), Stats., chs. 804–807 of the new rules of civil procedure are applicable. Sec. 806.07, Stats., which supplanted sec. 269.46(3), Stats. 1973, is pertinent to this appeal. It provides:

"806.07 **Relief from judgment or order.** (1) On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

". . .

"(h) Any other reasons justifying relief from the operation of the judgment.

"(2) The motion shall be made within a reasonable time. . . ."

This court traced the development of sec. 806.07(1)(h) and concluded that sec. 806.07(1)(h), like sec. 269.46(3), is a "catch-all provision for relief" and that the judge may in his discretion grant relief "when reasons justifying relief are apparent to the trial judge." In Matter of Estate of Smith, 82 Wis.2d 667, 672, 673, 264 N.W.2d 239 (1978).

This court has encouraged litigants and trial courts to utilize sec. 269.46(3) to correct both errors of law and findings of fact, and we have noted that the statute confers broad power on the trial court to do so. Kochel v. Hartford Accident & Indemnity Co., 66 Wis.2d 405, 418, 225 N.W.2d 604 (1975).

Stradinger argues that the trial court's order denying the City's motion to vacate the judgment is not appealable because the only issues raised by the motion were determined in the original judgment. Cf. Ver Hagen v. Gibbons, 55 Wis.2d 21, 25, 197 N.W.2d 752 (1972); Kochel v. Hartford Accident & Indemnity Co., 66 Wis.2d 405, 416–419, 225 N.W.2d 604 (1975), which are appeals

ting several affidavits and exhibits tending to show (1) that Stradinger had received frequent warnings about what the City considered to be his unsatisfactory performance and had indicated that he would quit and that the City could cancel the contract; (2) that the parties agreed before beginning the arbitration process that the process would not bind either of them; and (3) that the City, proceeding on the understanding that the arbitration was not binding, did not present evidence on its counterclaim and at one point waived testimony of a Department of Natural Resources official who did not appear at the hearing as scheduled. Stradinger put in no counter affidavits in opposition to the motion to reconsider.

The trial court denied, without written opinion, the City's motion for reconsideration. The City appeals from the trial court's judgment confirming the award and from its order denying reconsideration of the judgment. We affirm.

## II.

The City argues that the contract does not provide for binding enforceable arbitration. That part of the contract relating to arbitration provides as follows:

"9. In the event that the contractor shall fail to carry out the requirements of this service for a period of more than seven (7) days, and provided such failure shall not be due to strikes, catastrophe, acts of God, or other cause beyond the contractor's control, the City may see fit to make arrangements for the carrying out of the

from the order in contrast to the case at bar which is an appeal from both the judgment and order. Therefore, asserts Stradinger, the City's motion papers, including the affidavits, are not properly before this court. We need not decide this question in the case at bar. Our conclusion is the same whether or not the affidavits on the motion are considered.

work, and the parties shall immediately proceed to refer whatever issue exists to arbitration, one arbitrator to be appointed by the City, one to be appointed by the con- tractor, and a third to be selected by the two arbitrators. *If earnest and bona fide effort at arbitration fails to re- solve said issue, then after a period of seven (7) days and after either party shall have first appointed its arbitra- tor and shall have so notified the other party, either par- ty may proceed to legal determination of said issue, in- cluding determination as to breach of contract, termi- nation of contract, and loss, damage or other rights or remedies to which such party may be legally entitled.*" [Emphasis added.]

The City argues that the parties intended to provide a method for getting an "outsider's opinion" on a disputed issue, but that if that opinion proved to be unacceptable to either party to the contract, *i.e.* "if earnest and bona fide effort at arbitration fails to resolve said issue," each party had the right to bring a suit on the contract.

Stradinger contends, on the other hand, that the phrase "if earnest and bona fide effort at arbitration fails to resolve said issue" refers not to the situation in which one or both parties disagree with the arbitrators' find- ings and award, but rather to the situation in which the arbitration process breaks down before the arbitrators make an award.

■

Because arbitration is basically contractual, the con- troversy centers on the interpretation of the above quot- ed contractual language. The established rule is that the objective in interpreting and construing a contract is to ascertain the true intention of the parties.

In the case at bar, the trial court concluded that it "is clear from the record that the parties agreed to binding arbitration" governed by Ch. 298, Stats.

■

This court recently restated the scope of review of a trial court's construction of disputed language:

"The construction of a written contract is normally a matter of law for the court, although in a case of ambiguity in a written contract where words or terms are to be construed by extrinsic evidence, then the question is one for the trier of fact. *RTE Corp. v. Maryland Casualty Co.*, 74 Wis.2d 614, 621, 247 N.W.2d 171 (1976). The contract is to be considered as a whole in order to give each of its provisions the meaning intended by the parties. *Ketay v. Gorenstein*, 261 Wis. 332, 53 N.W.2d 6 (1952) ; *State ex rel. Department of Agriculture & Markets v. Badger Dairy, Inc.*, 245 Wis. 229, 232, 14 N.W.2d 34 (1944). If the construction is a question of law it may be redetermined independently by this court on appeal. *Zweck v. D P Way Corp.*, 70 Wis.2d 426, 435, 436, 234 N.W.2d 921 (1975). If the construction is a question for the trier of fact, this court will not disturb such finding unless it is contrary to the great weight and clear preponderance of the evidence. *Baldwin v. Anderson*, 40 Wis.2d 33, 41, 161 N.W.2d 553 (1968)." *Pleasure Time, Inc. v. Kuss*, 78 Wis.2d 373, 379, 254 N.W.2d 463 (1977).

The first sentence in paragraph 9 of the contract uses the term arbitration. The word arbitration ordinarily is understood to refer to a proceeding voluntarily undertaken by parties who want a dispute determined on the merits of the case by an impartial decision maker of their choosing, which decision the parties agree to accept as final and binding.[5] The parties' use of the term arbitration in the contract implies an agreement to be bound by the outcome of the arbitration. Thus the first sentence of the arbitration clause, reasonably interpreted, means that the parties intended to settle certain disputes regarding the contract by means of a third party's final and binding decision outside of court.

[5] Domke, *Commercial Arbitration* 2 (1965); Domke on Commercial Arbitration, secs. 1.01, 1.02 (1968); Elkouri & Elkouri, *How Arbitration Works* 2 (3d ed. 1973); Kellor, *Arbitration in Action*, 7, 9 (1941).

However the City contends that the second sentence of the arbitration clause must be interpreted to mean that the arbitration was not intended by the parties to be binding. The second sentence provides that when "earnest and bona fide effort at arbitration fails to resolve" the disputed issue, either party may bring a suit on the contract. The trial court reasoned that to read this sentence as the City urges, *i.e.* that arbitration "resolved" the disputed issue only if both parties agreed with the findings and award of the arbitrators, would be to make the process of "arbitration" specified by the contract "an exercise in futility," and "would not make good business sense." The City, however, urges that the purpose of the "arbitration" clause was simply to provide the parties with a condition precedent to legal action, an inexpensive way of avoiding costly litigation.

We cannot accept the City's interpretation of the contract. Had the City intended that the parties not be bound by the arbitrators' award it could have expressed this concept in a very simple sentence.

The City's explanation of the purpose of the arbitration clause does not explain why the parties described the particular means they chose as "arbitration." The parties had available to them a range of inexpensive means to avoid costly litigation, ranging from a cooling-off period through mediation to arbitration. The contract could easily have specified some other means of settlement procedures to precede litigation, but in fact the contract specifies "arbitration." The second sentence of the arbitration clause must be understood to permit either party to initiate a suit on the contract when and only when the arbitration process breaks down before the arbitrators make findings and an award.

It is clear that in the case at bar the arbitration process did resolve the disputed issue. Three arbitrators were

appointed pursuant to the contract; the parties appeared before the arbitrators and submitted evidence; a transcript was made; the parties submitted seven questions to be decided by the arbitrators; and the arbitrators answered the seven questions. These steps clearly constitute an earnest and bona fide effort at arbitration. And the effort at arbitration was successful; the arbitrators did reach a conclusion. Thus the last sentence of the contract clause is not applicable.

The City further argues that because the contractual language may be viewed as ambiguous, the court should look at extrinsic evidence to interpret the intent of the parties. This court has said that the construction of the contract adopted by parties in their dealings with each other is to be accorded great weight in interpreting a contract. *Jorgenson v. Northern States Power Co.*, 60 Wis.2d 29, 35, 208 N.W.2d 323 (1973)', quoting *Cutler-Hammer, Inc. v. Industrial Comm.*, 13 Wis.2d 618, 632, 109 N.W.2d 468 (1961). The City argues that the parties conducted themselves with the view that nonbinding arbitration was to ensue.

The extrinsic evidence, namely the pleadings and the affidavits and exhibits submitted with the motions, is not of great help to the trial court or this court in determining the meaning of the contractual language. We have no evidence of the conduct of the parties prior to the law suit. If we look to the conduct of the parties during the course of the proceedings in the trial court, the lawyers for each party, as it suited the interests of their clients, appear to have advocated both that the contract required the parties to abide by the arbitrators' decision and that the contract did not require the parties to abide by the arbitrators' decision. The City entered a plea of abatement to Stradinger's complaint but cited sec. 298.02, Stats. An arbitration award under ch. 298 is

irrevocable and binding on the parties. Later in the proceedings the City viewed the arbitrators' award as not binding. At various stages of the proceedings, Stradinger contended the arbitration was not binding. Later in the proceedings and on appeal Stradinger contends that the arbitration is binding. The acts of the parties are not helpful in aiding the court to determine the intent of the parties. *Carey v. Ruthman,* 55 Wis.2d 732, 739, 200 N.W.2d 591 (1972).

We conclude, as did the trial court, that the parties agreed by contract to submit the questions in issue to arbitration and to abide by the award of the arbitrators.

### III.

The City next argues that even if the parties agreed to arbitration, the arbitration called for by the contract is common law rather than statutory arbitration under ch. 298, Stats. If the City is correct, then the submission to arbitration constituted a discontinuance of the court action, the trial court did not have jurisdiction to enter an order confirming the award, and this court must reverse the judgment. The successful party enforces a common-law arbitration award as he would an ordinary contract; he does not seek an order confirming the award as Stradinger did in the case at bar. *Reith v. Wynhoff,* 28 Wis. 2d 336, 137 N.W.2d 33 (1965).

Where the intent of the parties is not clearly expressed, this court has favored construing an arbitration agreement as providing for statutory arbitration, rather than for common law arbitration. Statutory arbitration provides a more useful, less-expensive and less-formal method of dealing with arbitration awards than does common-law arbitration.

This court has held that ch. 298 should apply where the agreement to arbitrate is silent as to the applicability of ch. 298, Stats., the statutory arbitration provisions are not negated by the arbitration agreement, and the parties' conduct under the arbitration agreement has not been inconsistent with the statutory arbitration provisions. *Reith v. Wynhoff, supra,* 28 Wis.2d at 340; *Madison v. Frank Lloyd Wright Foundation,* 20 Wis.2d 361, 383–84, 122 N.W.2d 409 (1963).

In the case at bar the arbitration agreement makes no mention of ch. 298 and contains no provision which negates the statutory arbitration provisions. Since the commencement of this action, the conduct of both parties has been both consistent with and inconsistent with the statutory arbitration provisions, depending on which position promoted the interest of the client at the time.

Applying the principles of the *Reith* and the *Frank Lloyd Wright Foundation* cases, we conclude that the contractual arbitration agreement in issue was statutory and not at common law. Therefore the trial court had jurisdiction to confirm the award.

## IV.

Lastly, the City maintains that if the arbitration was binding, the parties and the arbitrators worked under the mistaken belief that it was not binding and that this material mistake worked a constructive fraud upon the City and caused the arbitrators to exceed and improperly use their authority. The trial court properly denied the City's contention.

It appears that the City is attempting to rely on sec. 298.10(1)(a), (d), Stats., which requires a court to vacate an award where the award is procured by fraud or where the arbitrators exceeded their powers.

"Sec. 298.10 . . . (1) In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

"(a) Where the award was procured by corruption, fraud or undue means;

". . .

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

We have said that " '[t]he mistakes that will void an award are those appearing on its face or gross mistakes of the arbitrators extraneously appearing as to their powers or duties, which result in real injustice or constructive fraud. . . . The mistake must so mislead the arbitrators that they did not apply the rules which they intended to apply, "so that upon their own theory a mistake was made which has caused the result to be something different from that which they had reached by their reason and judgment." ' " *Scherrer Constr. Co. v. Burlington Mem. Hosp.*, 64 Wis.2d 720, 728, 221 N.W.2d 855 (1974). To be a ground for the impeachment of an arbitration award, a mistake on the part of the arbitrators "must affect the principle of the award and must be so plain that if the arbitrators had been apprised of it before making the award, they would have awarded differently." 16 Williston on Contracts (1976), sec. 1923B, p. 705.

The City relies upon the mistake of both the parties and of the arbitrators regarding whether the arbitration was binding. As to the arbitrators, the only evidence in the record that they believed the arbitration to be merely advisory is found in two affidavits put in evidence by the City. The two affiants—the arbitrator designated by the City and the City's counsel—each averred that the parties and the arbitrators met and agreed that the arbitra-

tion be advisory.[6] There is no testimony or affidavit in the record from either the arbitrator designated by Stradinger or the third arbitrator regarding their opinion as to whether the arbitration was binding.

There is no evidence in the record that the substance of the arbitrators' findings was affected by their view as to the advisory nature of the arbitration. The arbitrators were not asked to determine whether the contract's arbitration clause called for binding arbitration. None of the seven questions that the parties proposed is related in any obvious way to the binding nature of the arbitration, and the City fails to suggest any respect in which the belief of the arbitrators regarding the binding nature of the arbitration could have biased or distorted the answers to any of those questions.

■

This court has held that an arbitrators' award is presumptively valid and will be disturbed only where invalidity is shown by clear and convincing evidence. *Scherrer Constr. Co. v. Burlington Memorial Hospital, supra,* 64 Wis.2d at 735. We conclude that the evidence is less than clear and convincing that the three arbitrators believed the arbitration to be advisory and that this belief affected the award of the arbitrators. Accordingly we reject the City's contention that the award should be impeached because of a mistake by the arbitrators.

The City also intimates that the award is invalid as a result of the City's allegation that the parties agreed the arbitration was merely advisory. As a result of this understanding, the City suggests it did not introduce into

---

[6] We need not in this case determine the admissibility of the affidavits. In *Koepke v. E. Liethan Grain Co.,* 205 Wis. 75, 78, 236 N.W. 544 (1931), we said

"In subsequent proceedings to impeach their award, their testimony as to what transpired in their hearing and deliberations will not be received for that purpose."

*See* cases in Annot., *Admissibility of Affidavit or Testimony of Arbitrator to Impeach or Explain Award,* 80 A.L.R.3d 155 (1977).

evidence before the arbitration panel all of the evidence it wished to introduce regarding its counterclaim against Stradinger. Without this evidence before it, the City implies, the panel made a greater award to Stradinger than it would otherwise have done,[7] and the award therefore worked a constructive fraud upon the City.

We have said that if a party neglects to present evidence, it is the party's own fault; such failure to present evidence does not vitiate the award. *Putterman v. Schmidt*, 209 Wis. 442, 451, 245 N.W. 78 (1932). The City does not explain how its alleged belief in the advisory nature of the arbitration shows that it was not neglectful for the City to omit to submit evidence that it itself admits is essential to its counterclaim. We conclude that the City's failure to submit that evidence does not vitiate the award.

For the reasons stated above, we affirm the judgment and order.

*By the Court.*—Judgment and order affirmed.

---

[7] The trial court concluded that all issues including the City's counterclaim were submitted in the seven questions answered by the arbitrators.