STATE EX REL. TEACHING ASSISTANTS ASSOCIATION, Plaintiff-Respondent,

v.

The UNIVERSITY OF WISCONSIN-MADISON and Glen Pound, as Chancellor of the University of Wisconsin-Madison, Defendants-Appellants.†

Court of Appeals

*No. 78–628. Argued May 3, 1979.—Decided April 15, 1980.* (Also reported in 292 N.W.2d 657.)

† Petition to review denied. ABRAHAMSON, J., took no part.

For the defendants-appellants there were briefs by *Bronson C. La Follette,* attorney general, *Charles D. Hoornstra,* assistant attorney general, and *David C. Rice,* assistant attorney general, and oral argument by *Charles D. Hoornstra,* assistant attorney general.

For the plaintiff-respondent there was a brief by *John S. Williamson, Jr.,* and *Habush, Gillick, Habush, Davis*

& *Murphy, S.C.,* of Milwaukee, and oral argument by *John S. Williamson, Jr.*

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J. This is an appeal from a judgment and order of the circuit court for Dane County entered pursuant to the Wisconsin Arbitration Act, ch. 298, Stats., confirming in all respects an arbitration award in favor of the plaintiff Teaching Assistants Association (TAA). The award orders the defendants-appellants (hereafter referred to as "university") to bargain collectively with the TAA as the exclusive representative of all teaching assistants employed by the University of Wisconsin-Madison on the subject of wages, among other subjects; to cease and desist from certain practices which the arbitrator found to be in violation of labor agreements between the parties; and to make whole all teaching assistants who incurred financial losses as a result of the university's failure to implement during the 1977–78 school year an across-the-board, seven percent pay increase for teaching assistants in conformity with its practice in prior years.

On appeal the university raises eleven separate issues and many subissues, most of which concern the legal power of the university to enter into collective bargaining agreements with unclassified state employees and agreements with respect to wages absent express statutory authority. Despite the importance of these issues, we are compelled to conclude that this case must be reversed for two interrelated threshold reasons which preclude this court from reaching the merits of the dispute.

Even if the university has the power to enter a collective bargaining agreement with the TAA, and even if the agreements involved in this suit could be construed as requiring the university to bargain the issue of wages, courts do not have unlimited power to enforce such agreements. Courts can act only within the scope of the

powers conferred upon them by statutes and the constitution of this state, and can exercise those powers only when they have been properly invoked. This case presents a unique test of those powers.

This is a lawsuit by unclassified state employees seeking the protection of the Wisconsin Arbitration Act against a state agency, the university. The legislature has expressly withheld the protection of the Wisconsin Arbitration Act from unclassified state employees. Other statutes permitting lawsuits against the state under certain conditions were not invoked, and the conditions which are prerequisite to the court's power to act under those statutes were not complied with. Courts therefore do not have the power to consider the contentions of either the TAA or the university in this action.

### The Issues

In our view the dispositive issues on appeal are: (1) whether the circuit court had jurisdiction under ch. 298, Stats., or at common law to decide the merits of this lawsuit, and (2) whether the action is barred in any event by art. IV, sec. 27 of the Wisconsin Constitution, which embodies the doctrine of the state's sovereign immunity from suit without the legislature's express permission.

The TAA has not responded to the university's contention that the circuit court had no power to act under ch. 298, Stats. Both parties address the difficult issue of sovereign immunity in a single paragraph of their briefs on this appeal, with but a single case citation each.

Courts are required by law to observe the limits of their powers and to inquire into their jurisdiction over an action, even if neither party raises the question.[1] Because we conclude that the courts are without jurisdic-

[1] *Brickley v. Neuling*, 256 Wis. 334, 337, 41 N.W.2d 284 (1950); *Harrigan v. Gilchrist*, 121 Wis. 127, 224, 99 N.W. 909 (1904).

tion over this action, we may not address the many other issues raised on appeal.

*Factual Background*

In April 1969, the University of Wisconsin-Madison and the TAA entered into a "structure agreement" pursuant to which the TAA was recognized as the exclusive bargaining representative for all teaching assistants at the University of Wisconsin-Madison. The agreement provided that the collective bargaining relationship between the parties would be governed by secs. 111.80 to 111.94, Stats. (1969), which then comprised the entire State Employment Labor Relations Act (SELRA) regulating the employment relationship between classified state employees and the state.[2] Since teaching assistants are unclassified state employees, they were not and are not presently covered by SELRA. Sec. 111.81(15).

Section 111.91, Stats. (1969),[3] excluded wages, as a mandatory subject of collective bargaining for state em-

---

[2] Because of subsequent amendments to the act, it is now comprised of secs. 111.80 through 111.97, Stats., inclusive.

[3] Section 111.91, Stats. (1969), provided:

(1) Matters subject to collective bargaining are the following conditions of employment for which the appointing officer has discretionary authority:

(a) Grievance procedures;

(b) Application of seniority rights as affecting the matters contained herein;

(c) Work schedules relating to assigned hours and days of the week and shift assignments;

(d) Scheduling of vacations and other time off;

(e) Use of sick leave;

(f) Application and interpretation of established work rules;

(g) Health and safety practices;

(h) Intradepartmental transfers; and

(i) Such other matters consistent with this section and the statutes, rules and regulations of the state and its various agencies.

(2) Nothing herein shall require the employer to bargain in relation to statutory and rule provided prerogatives of promotion,

ployees.[4] The structure agreement provided that "stipends and such other /elements of Teaching Assistant remuneration as are established at an all university or legislative level cannot be susceptible to collective bargaining culminating in a legally binding agreement," and excluded those subjects from collective bargaining between the parties. It further provided that the parties would "meet and discuss" such subjects in an effort to arrive at a joint recommendation to be submitted to the appropriate decision-making bodies, and that both were free to "submit their own independent recommendations" concerning the same in the event no agreement could be reached. The parties agreed that in all other respects the collective bargaining relationship between them would be governed by SELRA, and that disputes concerning the interpretation of sec. 111.91, "as applied to the peculiar relationship between the TAA and the University," were to be submitted to binding arbitration.[5] The Board of Regents approved this structure agreement in April 1970.

---

layoff, position classification, compensation and fringe benefits, examinations, discipline, merit salary determination policy and other actions provided for by law and rules governing civil service.

[4] Section 111.91, Stats. (1969), was amended by sec. 100, ch. 270, Laws of 1971 to make wages a mandatory subject of bargaining. The TAA makes no claim on this appeal that the amendment of the statute effected an amendment of the structure agreement so as to make wages a mandatory subject of collective bargaining between these parties.

[5] Section V. of the structure agreement provides:

In all other aspects the collective bargaining relationship between the parties shall be governed by the terms of the State Employment Labor Relations Act for public employees (Secs 111.80 et seq.) except as modified by this or subsequent agreement of the parties. Questions will inevitably arise concerning the interpretation of the language of Sec. 111.91 as applied to situations peculiar to the relationship between the TAA and the University. If the parties cannot reach agreement on such questions, the dispute shall be submitted to binding arbitration.

Pursuant to the structure agreement, the parties negotiated collective bargaining agreements covering various conditions of employment in the years following 1969. The 1976–77 agreement[6] provided in part:

There shall be two classifications of teaching assistants based on seniority:

(a) an inexperienced teaching assistant
(b) experienced teaching assistant

An inexperienced teaching assistant shall be a teaching assistant with less than one and two-thirds ($1\frac{2}{3}$) semester-units of seniority.

The agreement further provided that experienced teaching assistants "shall be remunerated at the 'experienced teaching assistant' pay scale set by the Regents of the University of Wisconsin," and established a system for calculating a teaching assistant's movement from the inexperienced to the experienced pay category.[7]

On May 28, 1976, the parties executed an addendum to the structure agreement to provide a machinery for

---

[6] The agreement was effective on its face from May 28, 1976 to September 5, 1977, but was extended by mutual agreement of the parties to October 10, 1977.

[7] The material portion of the seniority clause states:

*Section 1.* For the purposes of this agreement, seniority shall be defined in semester-units of teaching experience as a teaching assistant in the University of Wisconsin system; or as a teacher or graduate teaching assistant in an accredited university or college; or a teacher in a high school, vocational school, technical school, or community college; or any comparable experience in a foreign school system.

One semester-unit of seniority shall be granted to a teaching assistant who has taught one full semester of a two-semester academic year in a capacity defined above. Two-thirds of a semester-unit of seniority shall be granted to a teaching assistant who has taught one full tri-mester of a three-semester academic year in a capacity defined above. Two-thirds of a semester-unit of seniority shall be granted to a teaching assistant who has taught one full summer session in a capacity defined above.

handling allegations by either party "that the other has committed an act which, if the parties were covered by Section 111.90–.94 Wis. Stats. (*1969*), would be considered a prohibited practice."[8] (Emphasis supplied.) If informal accommodation could not be reached, the dispute was to be submitted to an arbitrator appointed by the Wisconsin Employment Relations Commission (WERC). The addendum provided:

> The parties agree that the arbitrator's award shall be final and binding *but further agree that either party may appeal the arbitrator's ruling in a prohibited practice case to County Court, as provided in Section 298, Wis. Stats.*
> Except as expressly provided herein, the parties agree that nothing in this section shall be construed as agreement to change the terms or coverage of the Structure Agreement of April 26, 1969. (Emphasis supplied.)

The record is silent as to whether the Board of Regents approved this addendum.

The parties agreed on May 28, 1976 to establish an "ad hoc advisory committee" to study teaching assistant remuneration during the 1976–77 school year. The committee of three teaching assistants, three members of the faculty, and three members of the university administration filed a report in January 1977, concluding that the combined effect of inflation and increased tuition fees had reduced the actual buying power of teaching assistant stipends by some twenty percent over the past five years. The report recommended increasing the

---

[8] Section 111.84(1) (d) and (1) (e), Stats. (1969), defined "prohibited practices" as including an employer's refusal to bargain collectively on mandatory subjects of bargaining and its violation of the terms of a written agreement respecting terms and conditions of employment. Since the 1969 statutes excluded wages from the mandatory subjects of bargaining, a refusal to bargain wages would not have constituted a prohibited practice under those statutes.

stipends and implementing certain tuition remission credits to offset these factors.

On June 28, 1976, the university administration unilaterally adopted a teaching assistant stipend schedule for the 1977–78 school year, and communicated this decision to the TAA. The plan maintained the "experienced-inexperienced" differential established in the then-effective labor agreement, but divided the "experienced" category into three subcategories or "levels" of teaching assistants who were to receive increasingly higher salaries for each additional year of experience on the Madison campus.

Upon receipt of the stipend schedule plan, the TAA communicated various objections to university officials. It also sought to place the plan and the underlying issues of wages and seniority levels on the bargaining table during the negotiations for a 1977–78 labor agreement which were then in progress. The university rejected this attempt, contending that it had never agreed to, and would not, bargain the subject of wages.

On September 18, 1977, the TAA filed a grievance against the university contending that its unilateral adoption of the stipend schedule violated the seniority clause of the labor agreement by setting four levels of pay rather than the two levels agreed to, and by employing criteria other than those specified in the labor agreement to differentiate between the three "experienced" categories of teaching assistants. On September 19, 1977, it filed a prohibited practice charge alleging that the university's refusal to bargain the stipend schedule violated the structure agreement. Both the grievance and the prohibited practice charge were subsequently submitted to arbitration.[9]

On September 26, 1977, the TAA filed a civil complaint in the circuit court for Dane County, naming as

[9] The precise date of submission to arbitration is not clear from the record.

parties "The University of Wisconsin-Madison" and Glen Pound, "as Chancellor of the University of Wisconsin-Madison." The complaint alleged the material provisions of the structure agreement and the labor agreement set forth above, the university's adoption of the new stipend schedule, and the fact that grievance and prohibited practice charges had been filed. It further alleged that the university had refused to delay implementation of the new schedule pending arbitration proceedings, and asserted irreparable injury to the TAA as a result of that refusal. The complaint demanded relief in the form of a judgment granting temporary and permanent injunctions prohibiting the defendants from implementing the stipend schedule "insofar as it creates two additional levels" during the pendency of the action or until binding arbitration awards were issued. The complaint also demanded that the circuit court "retain jurisdiction of this cause pending compliance with the arbitration award." [10]

The university, through the attorney general, [11] moved to dismiss the complaint on behalf of both named defendants on the grounds, among others, that it failed to state a claim upon which relief can be granted; that the State of Wisconsin had not consented to be sued; that the plaintiff had not complied with the provisions of sec. 285.01, Stats., which governs the commencement of cer-

[10] The complaint does not directly allege a breach of either the structure agreement or the collective bargaining agreement, nor does it seek judicial enforcement of either contract. It does not allege the violation of any statute. It does not seek declaratory relief. It does not state in what capacity defendant Glen Pound is being sued nor allege any wrongdoing or action whatsoever on his part.

[11] Under sec. 165.25(1) and (6), Stats., the Department of Justice is required to appear for the state and defend any action "in which the state is interested or a party," and the attorney general is permitted to represent individual state officers or employees at the request of the head of any department of state government.

tain types of suits against the state;[12] that the University of Wisconsin-Madison is not a legal entity which can be sued; and that no service of the action had been made on the Board of Regents.

Neither the university's motion to dismiss nor the TAA's demand for injunctive relief were ever heard or determined by the trial court. The university's brief on appeal states that the TAA "withdrew" its motion for injunctive relief when the parties submitted the dispute to arbitration.[13]

The arbitration hearing took place on October 25, 1977. The arbitrator issued the award against the university on November 19, 1977. On January 24, 1978, the TAA filed a motion in the circuit court for "an order pursu-

---

[12] Section 285.01, Stats., provides:

**Actions against state; bond.** Upon the refusal of the legislature to allow a claim against the state the claimant may commence an action against the state by service as provided in s. 801.11(3) and by filing with the clerk of court a bond, not exceeding $1,000, with 2 or more sureties, to be approved by the attorney general, to the effect that the claimant will indemnify the state against all costs that may accrue in such action and pay to the clerk of court all costs, in case the claimant fails to obtain judgment against the state.

This section has been construed to apply to claims arising out of contracts which would, if valid, render the state a debtor to the claimant. *Holytz v. Milwaukee,* 17 Wis.2d 26, 115 N.W.2d 618 (1962); *Trempealeau County v. State,* 260 Wis. 602, 51 N.W.2d 499 (1952); *Houston v. State,* 98 Wis. 481, 74 N.W. 111 (1898). The submission to and rejection of the claim by the legislature is a condition precedent to maintaining a suit on the claim, in the absence of which the court is without subject matter jurisdiction over the action. *See* n. 24, *infra.* It is clear from the record that no claim respecting any portion of the arbitration award in this case was submitted to the legislature.

[13] The motion for temporary restraining orders sought temporary relief in language identical to the injunctive relief demanded in the complaint. A hearing on this motion was ordered for October 7, 1977, but was apparently never held. No formal withdrawal of the motion appears of record.

ant to Chapter 298.09 Wis. Stats. for a judgment enforcing and confirming the award." The motion stated that it was based, in part, "upon the verified Complaint heretofore filed in this Court." A supporting affidavit alleged that on or about December 9, 1977, the university had officially informed the TAA that it would not comply with the award.

The university, in turn, moved to vacate the award on the grounds that ch. 298, Stats., was inapplicable to the contracts; that the arbitrator had exceeded his powers; and that the doctrine of sovereign immunity bars a suit against the state "and plaintiff's action should, therefore, be treated as an action for declaratory judgment against officials acting beyond their jurisdiction."[14]

On April 14, 1978, the trial court issued a memorandum decision affirming the arbitrator's award in part. Both parties filed motions to reconsider and clarify. On August 2, 1978, the court issued a decision affirming the award in its entirety. The court entered an order and judgment on September 25, 1978, from which this appeal was taken.

This case presents several complex procedural issues relating to the validity of the underlying action commenced by the TAA. These issues appear to have been abandoned by the parties after the TAA moved to enforce the arbitrator's award.[15] The trial court did not

[14] There is no explanation of record for the university's suggestion that the action be treated as one for declaratory judgment. No declaratory relief was ever demanded by the TAA. Actions for declaratory judgment against the state are barred by the doctrine of sovereign immunity, although the supreme court has allowed such suits against state officials and agencies alleged to be acting in excess of jurisdictional authority under certain circumstances. See Lister v. Board of Regents, 72 Wis.2d 282, 303, 240 N.W.2d 610 (1976), and n. 25, infra. No such allegation is contained in the TAA's complaint.

[15] See nn. 10 and 14. The TAA does not challenge the assertion in the university's brief that the "University of Wisconsin-Madi-

rule on them. We therefore disregard them on this appeal.

## Statutory Jurisdiction

We are compelled to agree with the university's conclusion that the circuit court was without jurisdiction under ch. 298, Stats., to enforce the arbitrator's award, though not for the reasons advanced by the university.

Section 298.09, Stats., provides that any party to an arbitration may apply to the court for an order confirming the award within one year after it is made. However, sec. 298.01 provides that ch. 298 "shall not apply to contracts . . . between employers and associations of employes, except as provided in section 111.-10."[16] Section 111.10, Stats.,[17] is a part of the Employment Peace Act which provides for the arbitration of collective bargaining disputes between employers and

son" is not a legal entity having capacity to sue or be sued. The university does not seriously press this point on appeal, however.

[16] The full text of sec. 298.01, Stats., provides:

**Arbitration clauses in contracts enforceable.** A provision in any written contract to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract; *provided, however, that the provisions of this chapter shall not apply to contracts between employers and employes, or between employers and associations of employes, except as provided in section 111.10 of the statutes.* [Emphasis supplied.]

[17] Section 111.10, Stats., provides:

**Arbitration.** Parties to a labor dispute may agree in writing to have the commission act or name arbitrators in all or any part of such dispute, and thereupon the commission shall have the power to so act. The commission shall appoint as arbitrators only competent, impartial and disinterested persons. Proceedings in any such arbitration shall be as provided in ch. 298.

employees in the private sector only.[18] Section 111.86 of SELRA[19] provides that disputes "pertaining to the interpretation" of labor agreements between the state and its *classified* employees[20] may be submitted to arbitration and that "[s]uch arbitration proceedings shall be governed by ch. 298."

Teaching assistants are not classified state employees. There is no statute similar to secs. 111.10 and 111.86, Stats., covering unclassified state employees. Consequently the labor contracts at issue in this case are expressly excluded from the scope of the Wisconsin Arbitration Act, and the court had no jurisdiction under sec. 298.09, Stats., to enforce an award based on those contracts.

The trial court recognized that parties may not confer jurisdiction on a court by contractual agreement.[21] It

---

[18] Section 111.02(2), Stats., expressly excludes the state or its political subdivisions from the definition of employers covered by the act.

[19] Section 111.86, Stats., provides in full:

**Arbitration in general.** Parties to the dispute pertaining to the interpretation of a collective bargaining agreement may agree in writing to have the commission or any other appointing agency serve as arbitrator or may designate any other competent, impartial and disinterested persons to so serve. Such arbitration proceedings shall be governed by ch. 298.

[20] SELRA, of which sec. 111.86, Stats., is a part, applies only to classified state employees as defined in sec. 111.81(15), which provides:

"Employe" includes any state employe in the classified service of the state, as defined in s. 230.08, except limited term employes, sessional employes, project employes, employes who are performing in a supervisory capacity, management employes and individuals privy to confidential matters affecting the employer-employe relationship, as well as all employes of the commission.

[21] *See Wis. Environmental Decade v. Public Service Comm.*, 84 Wis.2d 504, 515, 267 N.W.2d 609 (1978); *Gelatt v. De Dakis*, 77 Wis.2d 578, 584, 254 N.W.2d 171 (1977); *Muskego v. Vernon*,

held, nonetheless, that the parties' agreement to be bound by the statutory arbitration proceedings rendered the judicial review provisions of sec. 298.09, Stats., applicable, relying on *Madison v. Frank Lloyd Wright Foundation*, 20 Wis.2d 361, 122 N.W.2d 409 (1963). We think this reliance was misplaced.

The contract in *Frank Lloyd Wright Foundation* provided that disputes regarding services provided to the City of Madison by an architectural firm would be submitted "in accordance with the provisions . . . of the standard form of Arbitration Procedure of the American Institute of Architects." 20 Wis.2d at 383, 122 N.W.2d at 420. The issue was whether the agreement to arbitrate was an agreement at common law, which was terminable at the will of either party prior to the entry of an award, or a statutory agreement enforceable under sec. 298.01, Stats. The court held the agreement to be statutory, and said :

> Every contract that is subject to Wisconsin law and which contains an arbitration agreement, and which does not clearly negate the application of the provisions of the Wisconsin Arbitration Act, incorporates the provisions of that act and those provisions shall apply. Parties entering into a contract that is subject to Wisconsin law and which contains an arbitration agreement, may, as here, prescribe that the arbitration procedure of the American Institute of Architects (or of some other comparable authority) shall apply and the arbitration shall be considered subject to ch. 298, Stats. If one or more of the provisions of the agreed arbitration procedure is in conflict with the provisions of ch. 298, then the provisions of ch. 298 shall apply. 20 Wis.2d at 383–84, 122 N.W.2d at 421. [Footnotes omitted.]

Other cases have also held that ch. 298, Stats., applies where the agreement to arbitrate is silent on the applicability of ch. 298. *See Stradinger v. City of White-*

---

19 Wis.2d 159, 161, 119 N.W.2d 474 (1963); *Fox River P. Co. v. International Brotherhood*, 242 Wis. 113, 115, 7 N.W.2d 413 (1943).

*water,* 89 Wis.2d 19, 34–35, 277 N.W.2d 827 (1979);
*Reith v. Wynhoff,* 28 Wis.2d 336, 340, 137 N.W.2d 33
(1965); *Pick Industries, Inc. v. Gebhard-Berghammer,
Inc.,* 262 Wis. 498, 504, 56 N.W.2d 97 (1952).

However, none of these cases involved "contracts between employers and employes, or between employers and associations of employes" which are expressly excluded from coverage under the act by sec. 298.01, Stats. In none of them did the parties attempt to confer subject matter jurisdiction on the courts which had been expressly withheld by the legislature. None of them involved a suit to enforce an arbitration award against the state or one of its arms or agencies. Consequently, none of these cases support the trial court's determination that it had jurisdiction to enforce the award under ch. 298.[22]

The language of sec. 298.01, Stats., is plain. It provides that the chapter "shall not" apply to collective bargaining agreements except as the legislature specifically permits. No statute permits the enforcement of collective bargaining agreements between the state and its unclassified employees under ch. 298. We must therefore hold that those portions of the agreements between these parties which provide for the judicial enforcement of an arbitration award under ch. 298 are void, and that the court was without subject matter jurisdiction under that chapter to enter the order appealed from.

---

[22] The university attempts to distinguish *Frank Lloyd Wright Foundation,* 20 Wis.2d 361, on the ground that it dealt with the enforcement of a contract which the city was statutorily empowered to enter, whereas this case involves a contract with public employees which has not been expressly authorized by the legislature. This contention goes to the merits of the dispute between these parties. Since the court has no jurisdiction to consider the merits of that dispute, we do not address this contention.

## Common-Law Jurisdiction

Chapter 298, Stats., does not provide the exclusive vehicle for judicial enforcement of arbitration awards. Such awards are enforceable at common law in an action on contract. In such actions, the award is pleaded in the complaint, and is conclusive on the issues decided by the arbitrator within the limits of his jurisdiction. *Pick Industries, Inc.*, 262 Wis. at 503. *See also Stradinger*, 89 Wis.2d at 34; *Reith*, 28 Wis.2d at 339.

This is not such an action. The complaint did not seek the judicial enforcement of a contract or of the arbitration award. It sought only an injunction against the implementation of the new stipend schedule pending arbitration proceedings and the court's retention of an unspecified jurisdiction pending compliance with any future award. Both the complaint and the university's motion to dismiss the same were in substance abandoned by the parties during the arbitration proceedings. The subsequent motions to confirm and vacate the arbitrator's award could not confer common law jurisdiction on the court. Such jurisdiction must be invoked by process and cannot be invoked by a motion for an order as can proceedings under ch. 298, Stats. *Stradinger*, 89 Wis.2d at 34; *Pick Industries, Inc.*, 262 Wis. at 503.

Further, even viewing this action most liberally in favor of the TAA, as a properly commenced common law action to enforce the award, we are required to hold that the action is barred by sovereign immunity for the reasons that follow.

## Sovereign Immunity

The doctrine of sovereign immunity in this state derives from art. IV, sec. 27, of the Wisconsin Constitution, which provides:

The legislature shall direct by law in what manner and in what courts suits may be brought against the state.

The supreme court has repeatedly, and as recently as January, 1980, construed this language to mean that the legislature has the "exclusive" right to consent to a suit against the state. *Fiala v. Voight,* 93 Wis.2d 337, 342, 286 N.W.2d 824, 827 (1980) ; *Cords v. State,* 62 Wis.2d 42, 49–50, 214 N.W.2d 405, 409 (1974). In *Fiala,* 93 Wis. 2d at 342–43, 286 N.W.2d at 827, the court stressed that consent would not be implied from legislation which was less than clear and express:[23]

" 'It is not disputed that it is an established principle of law that no action will lie against a sovereign state in the absence of *express legislative permission.* It is further established that when a sovereign permits itself to be sued upon certain conditions, compliance therewith is a jurisdictional matter, and a suit against the sovereign may not be maintained unless such conditions are complied with.' " (Emphasis in original.) [Quoting *State ex rel. Martin v. Reis,* 230 Wis. 683, 685, 284 N.W. 580, 581 (1939) and *Kegonsa Jt. Sanit. Dist. v. City of Stoughton,* 87 Wis.2d 131, 144–45, 274 N.W.2d 598, 604 (1979)].

---

[23] *Fiala,* 93 Wis.2d 337, refused to imply legislative consent to suit against the state from sec. 895.46, Stats., which grants indemnification by the state for judgments against public officers and employees arising out of acts committed within the scope of employment. *Accord, Forseth v. Sweet,* 38 Wis.2d 676, 158 N.W.2d 370 (1968), in which the court rejected the contention that the legislature had consented to suit by enacting the indemnification statute considered in *Fiala* (then sec. 270.58, Stats.). The court's insistence on express authorization was emphasized in *Holzworth v. State,* 238 Wis. 63, 298 N.W. 163 (1941), in which the court found that although the Safe Place Act imposed a higher duty of care on the state in maintaining public buildings, consent to sue the state would not be implied from the statute in the event the state violated that duty of care.

*Fiala,* 93 Wis.2d at 341, noted that in many prior cases the supreme court had expressed its disapproval of the state's sovereign immunity from suit, had urged the legislature to abrogate this "antiquated" doctrine, and had itself abrogated the related judicially-created doctrine of governmental immunity from tort liability. *See also Cords,* 62 Wis.2d 42; *Townsend v. Wisconsin Desert Horse Assoc.,* 42 Wis.2d 414, 167 N.W.2d 425 (1969); *Forseth v. Sweet,* 38 Wis.2d 676, 158 N.W.2d 370 (1968); *Holytz v. Milwaukee,* 17 Wis.2d 26, 115 N.W.2d 618 (1962). The supreme court held in *Fiala,* however, consistent with its prior holdings, that the Wisconsin Constitution vests exclusive control over suits against the state and its agencies in the legislature, not in the courts.

"The doctrine of procedural immunity as to the state itself should be removed, but this change is directed to the legislature. The judiciary cannot step in where the legislature has failed to act to commence a change in the state's constitution." *Fiala,* 93 Wis.2d at 341–42, 286 N.W.2d at 827 [quoting *Cords,* 62 Wis.2d at 48, 214 N.W.2d at 409].

This recent pronouncement by the supreme court adheres to one of the earliest constructions of the constitutional requirement of art. IV, sec. 27, Wisconsin Constitution, which was set forth in *Chicago M. & St. P. Ry. v. State,* 53 Wis. 509, 513, 10 N.W. 560, 561 (1881), and quoted with approval in *Cords,* 62 Wis.2d at 50, 214 N.W.2d at 409–10.

". . . It is not self-executing, and manifestly was not so intended. Otherwise, the mandate would have been to the courts instead of the legislature, and the consent of the state to be sued for the same causes which would support actions against individual citizens, would have been expressly given. We are of the opinion, therefore, that *an action of any kind directly against the state can-*

*not be maintained in this or any other court, unless it is authorized by some statute of the state."* [Emphasis supplied.]

The TAA does not specify any statute under which this action to enforce an arbitration award against a state agency is expressly or implicitly authorized. It did not ground the action on any of the commonly utilized statutory mechanisms provided by the legislature for suits against the state such as ch. 227, Stats. (authorizing judicial review of administrative agency decisions and actions),[24] or ch. 285, Stats. (authorizing suits against the state after the presentation to and rejection by the legislature of "claims" against the state).[25] Nor did it bring an action for declaratory relief against individual officers under the Declaratory Judgment Act, sec. 806.04, Stats., which, under *Lister v. Board of Regents,* 72 Wis.2d 282, 302–03, 240 N.W.2d 610 (1976), provides a limited exception to the rule prohibiting suits

[24] In *Kegonsa Jt. Sanit. Dist. v. City of Stoughton,* 87 Wis.2d 131, 150, 274 N.W.2d 598 (1979), the court held that the plaintiff's failure to commence an action to review an administrative decision within the time limits provided by ch. 227 deprived the court of subject matter jurisdiction and required dismissal of the untimely portion of the action. *See also: Wis. Environmental Decade,* 84 Wis.2d 504; *Cudahy v. Department of Revenue,* 66 Wis.2d 253, 261–62, 224 N.W.2d 570 (1974); *State ex rel. Martin v. Juneau,* 238 Wis. 564, 568, 330 N.W. 187 (1941).

[25] The failure to follow the procedural requirement for submission of claims to the legislature prior to suit deprives the court of subject matter jurisdiction over the action. *See: Kegonsa Jt. Sanit. Dist.,* 87 Wis.2d 131, *State v. Rosen,* 72 Wis.2d 200, 240 N.W.2d 168 (1976); *Evans v. Dept. of Local Affairs & Development,* 62 Wis.2d 622, 215 N.W.2d 408 (1974); *Cudahy v. Department of Revenue,* 66 Wis.2d 253; *Claflin v. Department of Natural Resources,* 58 Wis.2d 182, 206 N.W.2d 392 (1973); *Brachtl v. Department of Revenue,* 48 Wis.2d 184, 179 N.W.2d 921 (1970); *Broadbent v. Hegge,* 44 Wis.2d 719, 172 N.W.2d 34 (1969).

against the state under certain circumstances not here present.[26]

The TAA contends that even if the principles of sovereign immunity are applicable, the university has waived the right to raise the defense. The TAA does not suggest any reason why the doctrine would not be applicable to this case,[27] nor does it state the manner in which the claimed waiver occurred.

The sole authority offered in support of the TAA's claim is *Kenosha v. State,* 35 Wis.2d 317, 151 N.W.2d 36 (1967). That case held that sovereign immunity is a "personal-jurisdictional defense" which must be raised or deemed waived, and that an individual state officer who had merely entered a general demurrer to a complaint for declaratory judgment had waived his immunity

---

[26] In *Lister,* 72 Wis.2d at 303, 240 N.W.2d at 623 the court said that since the declaratory judgment statute does not provide for suits against the state, such suits are barred by sovereign immunity. It noted, however, a limited exception:

[T]he court has also recognized that the declaratory judgment procedure is particularly well-suited (in cases where such relief is otherwise appropriate) for resolving controversies as to the constitutionality or proper construction and application of statutory provisions. As a result, it has been necessary to engage in a fiction that allows such actions to be brought against the officer or agency charged with administering the statute on the theory that a suit against a state officer or agency is not a suit against the state when it is based on the premise that the officer or agency is acting outside the bounds of his or its constitutional or jurisdictional authority.

We know of no comparable Wisconsin case which authorizes the use of the declaratory judgment statute in an action against state officials involving the validity and construction of a contract, as opposed to the validity and construction of statutes.

[27] It does not contend, for instance, that the university is not an arm or agency of the state entitled to claim the protection of sovereign immunity. Such a contention would be without merit. *See Lister,* 72 Wis.2d 282; *Sullivan v. Board of Regents of Normal Schools,* 209 Wis. 242, 244 N.W. 563 (1932).

from suit. 35 Wis.2d at 328, 151 N.W.2d at 42. *See also Cords,* 62 Wis.2d 42. *Kenosha* and *Cords* are inapplicable. The university moved to dismiss the complaint on the express ground of sovereign immunity immediately after it was commenced.

The university reiterated its claim of immunity, although it did so in a less than clearcut manner, in its motion to vacate the arbitrator's award,[28] and during the course of this appeal.[29] It is possible to view these latter references to sovereign immunity as an attempt to limit the defense to that portion of the arbitrators' award which orders financial restitution based on the university's failure to implement the traditional seven percent pay raise. We know, however, of no authority permitting the partial assertion of the defense to selected issues in a lawsuit against the state and none has been cited by either party.

Assuming that the university attempted to waive the defense to a part of the lawsuit and voluntarily sought the court's resolution of the underlying legal issues raised by the parties (and no such claim is made), we conclude the attempt must fail. No court has power to resolve disputes over which it has no subject matter jurisdic-

[28] *See* n. 14, and related text. The motion suggested that the court treat the action as one for declaratory judgment against officers acting in excess of their powers.

[29] The university's brief in chief on appeal alleges only that the "principle of sovereign immunity bars confirmation of the arbitrator's 7 percent award," citing *Lister,* 72 Wis.2d 282. Its reply brief broadly denies the TAA's contention in its brief that the university waived the defense, relying on language in *Lister, supra,* for the proposition that only the legislature may authorize a waiver. During oral argument, counsel for the university stated that it had raised the sovereign immunity defense "just on the money item." The university's motion to dismiss the TAA's complaint on sovereign immunity grounds was not, however, limited to any particular issue.

tion.[30] Such jurisdiction cannot be conferred by waiver, whether inadvertent or by design.[31] In *Kenosha*, 35 Wis. 2d 317, the supreme court expressly found that the court had subject matter jurisdiction under the declaratory judgment act. No comparable statutory authority has been invoked in this case. Though courts have common law jurisdiction to enforce arbitration awards as a general matter, they are without jurisdiction to enforce the same against the state absent express legislative authorization. *Chicago M. & St. P. Ry.*, 53 Wis. 509.

Finally, if the TAA's assertion that sovereign immunity has been waived rests on the university's agreement to submit to binding arbitration and judicial enforcement of any award, the claim is without foundation. A similar claim was made and rejected in *Lister*, 72 Wis.2d 282. In that case students brought a suit for declaratory judgment and damages claiming that they had been improperly classified as nonresidents and wrongfully required to pay tuition at nonresident rates under the applicable statute. A university regulation authorized appeal from adverse decisions by the regis-

[30] *State ex rel. Skinkis v. Treffert*, 90 Wis.2d 528, 280 N.W.2d 316 (Ct. App. 1979); *Gelatt*, 77 Wis.2d 578; *Gruetzmacher v. Wanninger*, 113 Wis. 34, 88 N.W. 929 (1902); *Telford v. City of Ashland*, 100 Wis. 238, 75 N.W. 1006 (1898); *Burnham v. Norton*, 100 Wis. 8, 75 N.W. 304 (1898); *Meyer v. Garthwaite*, 92 Wis. 571, 66 N.W. 704 (1896); *Plano Mfg. Co. v. Rasey*, 69 Wis. 246, 34 N.W. 85 (1887); *Wright v. Northwestern Union Ry. Co.*, 37 Wis. 391 (1875); *Haight v. Lucia*, 36 Wis. 355 (1874).

[31] *See* sec. 801.04(1), Stats., which provides in part:

**Jurisdiction of subject matter required for all civil actions.** A court of this state may entertain a civil action only when the court has power to hear the kind of action brought. The power of the court to hear the kind of action brought is called "jurisdiction of the subject matter." Jurisdiction of the subject matter is conferred by the constitution and statutes of this state and by statutes of the United States; it cannot be conferred by consent of the parties.

trar respecting residency status to a university "Committee on Appeals" and provided:

"The Committee constitutes the final appellate body within the University system. Any relief beyond that granted by the Committee must be sought through the Courts." 72 Wis.2d at 294, 240 N.W.2d at 618.

The students contended that the regulation constituted a waiver of sovereign immunity and that the state was estopped from raising that doctrine in defense of the lawsuit. The court held:

As a general rule the legislature is the proper body to authorize suits against the state. An agency or officer of the state may not waive the state's immunity from suit unless specifically authorized to do so. Since the statutory provisions granting certain powers to the Board of Regents contain no such authorization, the plaintiffs' reliance on the document is misplaced. In addition, it appears that the principle of estoppel will not be applied to deprive a state of its sovereign rights. 72 Wis.2d at 294, 240 N.W.2d at 618–19. [Footnote omitted.]

Because no statute confers power on any university official to waive the defense of sovereign immunity, its agreement to the judicial enforcement of arbitration awards against it is void under *Lister*, 72 Wis.2d 282.

It may be that a court could determine the merits of this dispute in an action under ch. 227, Stats., to review decisions of administrative agencies, in an action under ch. 285, Stats., after the presentation to and rejection by the legislature of a claim against the state, or in a declaratory judgment action against state officials alleged to be acting in excess of their statutory powers.

Suit was not attempted within one of those alternatives (the availability of which we do not decide) and the legislature has not consented to any other method of enforcing arbitration awards against the state by un-

classified state employees. Absent legislative authorization to sue, the courts are powerless to act. For these reasons the action must be dismissed.

*By the Court.*—Judgment and order reversed and remanded for proceedings consistent with this opinion.